E-FILED
Thursday, 11 April, 2019  04:55:21 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

CYNTHIA H.,
     Plaintiff,

v.

COMISSIONER OF SOCIAL
SECURITY,
     Defendant.

Case No. 4:18-cv-04056-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10) and the Defendant's Motion for Summary Affirmance (Doc. 14). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted. [1]

**I**

Cynthia H. filed her applications for disability insurance benefits (DIB) and supplemental security income (SSI) on March 18, 2014 and alleged disability beginning on March 28, 2013. Her claims were denied on August 5, 2014 and were denied on reconsideration on May 11, 2015. Cynthia filed a request for hearing concerning her DIB and SSI applications on June 25, 2015. A hearing was held on December 6, 2016 before the Honorable Shreese M. Wilson (ALJ). At that hearing, Cynthia was represented by an attorney and a vocational expert (VE) testified. The

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 7) on the docket

ALJ issued an unfavorable decision on May 2, 2017. Cynthia's request for review by the Appeals Council was denied on February 15, 2018, making the ALJ's decision the final decision of the Commissioner. Cynthia timely filed the instant civil action seeking review of the ALJ's Decision on March 17, 2018.

## II

At the hearing, Cynthia testified that she was 45 years old and lived in a house with her grandparents and mother. She was previously a licensed practical nurse. She last worked in October 2010. She testified back pain caused her to quit working at that time. Cynthia testified she became worse since 2010; she now used a walker and had to sit at least two times to rest when she went to Walmart. She started using a cane about a year before the hearing and had been using the walker for about for or five months. She constantly [had] pain in [her] back." AR 46. Cynthia explained that lifting caused her pain and said she could not even walk around and hold her seven-month-old, 19-pound grandson. It was a "tag team effort" between Cynthia and her mother to lift the grandson out of his crib. AR 48. When asked whether any doctors recommended Cynthia not lift a particular amount of weight, she responded, "I think [Dr. Santiago, her treating doctor] said not to lift more than 20 pounds." AR 48. Cynthia elaborated that she could lift 20 pounds but "I'm going to pay for it." *Id*.

Cynthia also testified about the pain in her hands. She said she slept in different positions, "pretty weird positions," in an attempt to relieve the pain in her hands. AR 50. She was diagnosed with carpal tunnel in both wrists. She had corrective surgery on the left wrist:

> It relieved the pain that I had, but I still have the numbness and tingling, and I don't have a good grip. I can't like when I go to get up, like you can push yourself up with your hands, I can't do that. I have to use my elbows or my – what are these – forearms.

AR 51.  No permanent limitations were put on Cynthia following the surgery on her left wrist.  She said "occasional pain has started back up.  Nothing like it was before."  *Id.*  She said before the surgery both of her hands would be in such pain as to cause her tears.  Cynthia did not yet have surgery on her right hand.  She wore a brace but it caused her more pain.  She affirmed surgery was planned for her right hand when she was ready to proceed with it.  She used her walker by pushing it with her forearms.  As for daily activities, Cynthia tried to help her mother prepare supper and would sit on a stool and stir whatever was being cooked but then would have to quit because her hands would start hurting.  She was able to dress herself.

Cynthia later testified that she no longer babysat her grandchildren but instead simply spent time with them because she could not lift her seven-month-old grandson:  "I mean I will do it [lift up her grandson when he cried] but we will have to immediately sit on the couch and then I'll be in extreme pain for a while and – ."  AR 56.  Cynthia also testified she could lift her five-year-old, 27-pound granddaughter but she would have to sit down and then be in "extreme pain" for a while or would even have to lay down.  Cynthia guessed she would be able to lift "[m]aybe five pounds" though she had not tested it to know exactly what she could lift.  AR 56.

Cynthia's attorney then questioned her.  Cynthia testified she could use her right dominant hand for gripping, grasping, and handling things for five to 10 minutes before "I have to, well, things will just fall through my hands."  AR 61.  After that, she would rest them or rub them.  She confirmed her left hand carpal tunnel surgery reduced the pain in her left hand but she still had numbness and tingling in it.  She could use her left hand for the same amount of time as her right hand – five to 10 minutes.  She thought she could use her hands for "[p]robably about two hours" in an eight-hour period of a day for gripping, grasping, and

handling.  AR 62.  Cynthia's attorney pointed out that Dr. Santiago indicated over two years prior to the hearing that Cynthia had limitations using her hands to five to 10 percent of the time.  Cynthia stated she thought those limitations were the same at present.  "Or it might even be worse now because that pain is so, when I get that pain, oh, it just brings me to tears."  AR 62.

The VE was then questioned.

III

In her Decision at Step Two, the ALJ determined Cynthia had the following severe impairments:  bilateral carpal tunnel syndrome and status post left carpal tunnel syndrome release; right knee and left hip degenerative joint disease; lumbar spine degenerative disc disease; right shoulder tendinitis and bursitis; diabetes; obesity; fibromyalgia; and hypertension.  AR 17.  At Step Three, the ALJ determined Cynthia did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  At that step, the ALJ first detailed consultative examiner Peter Sorokin, M.D.'s April 25, 2015 examination results.

As for Cynthia's back issues, the ALJ included treating doctor Julio Santiago, M.D.'s August 2016 notes that examination revealed normal range of motion with the ability to walk with a cane, and Cynthia showed some lumbar tenderness but the back examination was otherwise within normal limits.  His earlier March 2016 notes included that physical examination revealed normal joint range of motion with no swelling, no sensation loss, and abnormal reflexes were not reported.  Cynthia's chronic back pain was treated with medication at that time.  In September 2016, Cynthia displayed normal range of motion of all joints with no tenderness, no swelling, no deformity, and a normal gait.  At that time, Dr. Santiago did not report symptoms of radiculopathy, muscle atrophy, or motor weakness, no abnormal reflexes, and no sensation loss was detected.

4

Radiographic imaging in October 2016 showed lumbar disc disease with mild spinal stenosis and an annular tear of the lateral aspect of the L4-L5 disc, and June 2015 nerve conduction studies revealed no evidence of left lower limb radiculopathy or neuropathy.

The ALJ also included that Cynthia was diagnosed with carpal tunnel syndrome, bilaterally, which was confirmed by nerve conduction studies:

> She had corrective surgery on the left successfully completed October 17, 2016 . . . she testified that this relieved pain, but she alleged residual numbness. The claimant has been treated for right carpal tunnel syndrome with medication, splints, and injections[.]

AR 22.

The ALJ made the following residual functional capacity [RFC] finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able to lift and carry 20 pounds occasionally and 10 pounds frequently; she is able to walk and stand for one hour each per workday, sitting for the remainder of the day; she is unable to climb ladders, ropes, or scaffolds; she is able to occasionally climb ramps or stairs as well as stoop, kneel, crouch, and crawl; she is able to reach overhead with the dominant upper extremity only occasionally; she is limited to frequent bilateral fingering and handling; she must avoid concentrated exposure to extreme cold (less than 50°F); she is to avoid concentrated exposure to unprotected heights in hazardous machinery; she is able to ambulate to and from the workstation with the assistance of a cane; she is to be allowed to alternate between sitting and standing once every 30 minutes for five minutes.

AR 23. The ALJ stated, pointing to evidence of record, that "the objective medical evidence [was] inconsistent with the claimant's allegation of complete and total disability." AR 23. Then, the ALJ stated, "the claimant's description of daily activities belies the allegation of complete and total disability" and proceeded to list those activities. AR 24. After that, the ALJ stated:

> No objective examining or reviewing physician or other medical
> source has reported that the claimant is disabled or unable to work.
> The claimant does not have disabling side effects due to medication
> and is generally treated with conservative measures; although she
> underwent left carpal tunnel syndrome surgery to treat her allegedly
> disabled [sic] back condition[.]

AR 24.

> The ALJ turned to the opinion evidence of record and stated:

> In evaluating all opinion evidence, the undersigned grants weight
> according to opinions that are supported by sufficient documentation
> of evidence, clear articulation for the basis of the opinions, and
> consistent findings with other objective medical evidence of record[.]

*Id*. The ALJ concluded the State Agency reviewing medical sources' assessments were of "limited probative value." *Id*. The ALJ addressed Dr. Santiago's March 2017 opinion that Cynthia would "have significant difficulty in finding gainful employment." AR 25. The ALJ determined that opinion was "irrelevant and of no probative value." *Id*. The ALJ set forth Dr. Santiago's October 2014 assessment of Cynthia that she was incapable of performing sedentary duty work and determined the assessment could not be afforded controlling weight.

The ALJ concluded that Cynthia's multiple physical impairments, combined, prevented her from performing "strenuous work activity, such as lifting or carrying more than 20 pounds occasionally or 10 pounds frequently." AR 26. The ALJ continued:

> She has had corrective surgery for left carpal tunnel syndrome
> performed in October 2016, and she admitted this relieved pain but
> not residual numbness. Right carpal tunnel syndrome has not
> required surgery, and the claimant is limited to frequent (not
> constant) fingering and handling, bilaterally.

*Id*. At last, the ALJ explained:

> The claimant is capable of performing the lifting and carrying requirements of light duty work but is limited to sedentary work due to walking and standing limitations. All of the claimant's impairments, including nonsevere impairments, have been considered in assessing the claimant as capable of performing this range of sedentary work. This [RFC] assessment is supported by the objective medical evidence of record, by treatment notes from attending medical sources, by other medical reports, and by the claimant's description of daily activities. The claimant retains the ability to perform a wide range of sedentary work.

*Id*.

## IV

### A

Cynthia argues that substantial evidence does not support the ALJ's finding that Cynthia can use her hands frequently in a work setting.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566; 416.966[2]. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)   currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)   suffers from an impairment that is severe or whether a combination of her impairments is severe;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)   is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

    5)    is unable to perform any other work existing in significant
          numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

    The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

    In the instant case, Cynthia claims error on the ALJ's part at Step Four.

### B

    Cynthia argues that the critical question is whether the record supports the ALJ's finding that she can use her hands for fingering and handling on a frequent basis. She argues her testimony about her inability to use her hands on a repetitive basis is not inconsistent with the record, including treating doctors' records and objective evidence, and thus shows that she had an ability far less than the ability to use her hands frequently in an eight-hour day. The Commissioner counters that the ALJ identified abundant evidence conflicting with Cynthia's December 2016 testimony that she could grip, grasp, and handle for only two total hours per workday and that just 10 minutes of such activity would cause objects to fall through her hands.

    SSR 16-3p directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016), *citing* SSR 16-3p. SSR 16-3p provides that all the evidence, including objective medical

evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8. SSR 16-3p reminds those considering it that, "Subjective symptom evaluation is not an examination of an individual's character." *Id*. at *2.

The ALJ first detailed that the objective medical evidence was not consistent with Cynthia's allegation of disability, specifically her allegations of pain, where medical evidence did not demonstrate she had significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities. The ALJ did include that nerve conduction studies showed carpal tunnel syndrome. The ALJ next detailed why Cynthia's daily activities "belie[d] the allegation of complete and total disability." AR 24. She noted Cynthia, among other things, participated in a wide range of activities during the day, had lived independently and then with relatives, attended to her own needs and the needs of her two grandchildren, played with her two grandchildren, lifted those children, dined at restaurants with friends and family, and enjoyed reading and singing. The ALJ further noted Cynthia admitted at the hearing that an attending physician restricted her from lifting more than 20 pounds[3] at one time. The ALJ next considered that Cynthia did not have disabling side effects due to medication

---

[3] Cynthia acknowledges the reference to 30 pounds rather than 20 pounds throughout the ALJ's Decision was an "opinion-writing error." Plf's MSJ (Doc. 11 at pg. 14).

and was generally treated with conservative measure, although she did undergo left carpal tunnel syndrome surgery.

As for the opinion evidence of record, the ALJ determined the State Agency doctors' findings that Cynthia was not disabled were not supported by the record, that his RFC determination supplanted that of the State Agency doctors, and that the RFC assessment was based upon all the evidence of record including additional medical documents and testimony that was not before those sources. Treating Dr. Santiago's opinion that Cynthia would "have significant -difficulty in finding gainful employment" was rejected as irrelevant and of no probative value because that was not the issue and he did not provide specific work-related limitations. The ALJ did include that Dr. Santiago opined that Cynthia may have persistent residual peripheral neuropathy symptoms despite surgical intervention of left carpal tunnel syndrome.

The ALJ proceeded to address Dr. Santiago's October 2014 Physical RFC Questionnaire in which he assessed Cynthia as incapable of performing even sedentary duty work where she was limited to five to 10% use of both hands, would miss more than four days of work per month, and was unable to sit or stand for more than five minutes at one time. The ALJ highlighted that Dr. Santiago's Questionnaire predated Cynthia's left carpal tunnel syndrome surgery. The ALJ further illustrated that Dr. Santiago's assessment was "directly contradicted by the treatment notes from Dr. Santiago himself; during his examinations, he has not consistently reported that the claimant is unable to lift or carry due to range of motion loss or pain." AR 25. In those notes, Dr. Santiago did not note Cynthia was basically unable to use her hands and instead described her as having full range of motion of her joints, he did not report sensation loss or reflex abnormalities, he did not report signs and symptoms that would support his opinion that Cynthia was unable to perform sedentary work, and he did not

provide objective medical evidence such as laboratory or test results that would confirm his assessment. The ALJ also explained that Dr. Santiago's opinion was not supported by treatment notes provided by other doctors, and the ALJ pointed to Cynthia's neurologist who "successfully treated left carpal tunnel syndrome with surgery." *Id.*

The Court does not find that the ALJ went awry in his consideration of the factors relevant to his consideration of Cynthia's testified-to inability to use her hands. None of the alleged errors to which Cynthia points appear in the ALJ's Decision. First, Dr. Santiago's October 2014 Questionnaire was specifically addressed – and rejected – by the ALJ where it pre-dated Cynthia's left carpal tunnel syndrome surgery. Second, the ALJ explicitly acknowledged that Cynthia had carpal tunnel syndrome, that she was treated for it, and that she continued to have symptoms from it. As the Commissioner argues, a mere diagnosis is not enough. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (explaining that it was not enough to show claimant received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period where fibromyalgia was not always disabling); *and Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment. A person can be depressed, anxious, and obese yet still perform full-time work").

Second, Cynthia takes issue with the ALJ's consideration of her daily activities, arguing that none of her activities (to which she testified) indicate an ability to use her hands for six hours a day. However, it is apparent from the ALJ's discussion of Cynthia's daily activities that she did *not* rely upon them to reject Cynthia's alleged pain due to carpal tunnel syndrome. Rather, the ALJ considered the fact that Cynthia's daily activities were inconsistent with her alleged

symptoms caused by her other impairments.  Cynthia cannot now be heard to take issue with that fact; the ALJ complied with her obligation to consider Cynthia's daily activities to the extent they shed light on her subjective symptoms as a whole. Moreover, the ALJ sufficiently traced the path of her reasoning between the evidence of Cynthia's carpal tunnel syndrome and the conclusion that it did not limit Cynthia beyond the limitation included in the RFC finding.  *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The ALJ considered all the evidence of record (see above) and gave particular attention to those factors listed in SSR 16-3p.

Third, Cynthia's assignment of error to the fact that the ALJ stated Cynthia's right carpal tunnel syndrome had not required surgery and that her left carpal tunnel syndrome surgery was "successful," amounts to nitpicking.  In providing the ALJ's Decision with a commonsensical reading, as it must, the Court finds no error that warrants remand.  *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (providing that the reviewing court will give the ALJ's opinion a "commonsensical reading rather than nitpicking at it").  As discussed above, the ALJ engaged in an accurate and complete discussion of the relevant evidence of record.  In doing so, the ALJ pointed to substantial evidence in support of her conclusion that Cynthia was not limited beyond the RFC finding.  Specifically regarding Cynthia's left carpal tunnel syndrome surgery, the ALJ stated: "[Cynthia] had corrective surgery on the left successfully completed October 17, 2016.  She testified that this relieved pain, but she alleged residual numbness."  AR 22.  The Court does not perceive the ALJ's use of "successful" to be egregious, especially where the ALJ expressly noted Cynthia testified to continued numbness in that hand and pointed to ample evidence that contradicted Cynthia's allegations that the use of her hands was so

13

painful as to preclude their frequent use in an eight-hour work day. For the same reasons, the ALJ's statement that "[Cynthia's r]ight carpal tunnel syndrome has not required surgery" is not harmful error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). Additionally, Cynthia places too much emphasis on Steven G. Potaczek, M.D.'s comment that he thought doing both wrists "is the way to go. We will set this up in the near future." AR 999. That comment in the record is a mere scintilla of evidence, at the most, in support of Cynthia's position. Her contention that the ALJ asked her no questions about why she waited to have surgery distorts the testimony of record. It was unnecessary for the ALJ to ask why Cynthia waited to have surgery as Cynthia provided her reasons for why she did. The ALJ asked:

> Q.  So are they planning like, are they planning on doing surgery on the right?
>
> A.  Yeah, when I'm ready he will. But I want to make sure that I can do more with this hand before I deal with my right, have surgery on my right because of walking with my walker or my cane. My cane, I walk with my right hand, and I won't be able to with surgery. So I want to make sure my left hand hopefully gets better than what it is so I can use my walker, at least have one grip that's better than the other grip.

AR 52.

Finally, Cynthia makes too much of Dr. Sorokin's alleged failure to mention her carpal tunnel syndrome. She argues that Dr. Sorokin had no knowledge of her carpal tunnel and provided "merely a baseline of function before any use has occurred." Plf's MSJ (Doc. 11 at pg. 23). Dr. Sorokin, however, indicated in his April 2015 Internal Medicine Consultative Examination report that he reviewed all the information sent by the Bureau of Disability Determination Services

including "Discharge summaries admission 01/07/2015 discharge 01/08/2015 final diagnosis [included] . . . carpal tunnel syndrome[.]"  AR 648.  He also included in his report that Cynthia could dress herself, had no problems using buttons or zippers, could open a door with a doorknob or a jar, and she could pick up a pen or coin.  AR 649.  Upon musculoskeletal examination, Cynthia had 5/5 grip strength in both hands, normal ability to grasp and manipulate objects, fully extend the hands, make fists, and oppose the fingers.  *Id.* at 650-551.  As the Commissioner argues, the ALJ did not rest his finding of Cynthia's use of her hands to frequent bilateral fingering and handling on Dr. Sorokin's one-time evaluation of Cynthia.  Instead, the ALJ pointed to several instances in the record which were *consistent* with Dr. Sorokin's one-time evaluation and which were *inconsistent* with Cynthia's testimony (e.g. Dr. Santiago's treatment notes, Cynthia's neurologist's records).  Of course, Dr. Sorokin's examination report was evidence of record and therefore properly considered by the ALJ, regardless of what Cynthia thinks of its value or its persuasiveness.  *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (providing an ALJ's decision "must be based upon consideration of all the relevant evidence").  The Court, meanwhile, cannot reweigh the evidence simply because Cynthia perceives it as essentially useless to the evaluation of her testimony.  *See id.* ("Although we review the entire record, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the Secretary").

## C

Cynthia argues as "emblematic of [the ALJ's] decision-making, that from Cynthia's testimony she could lift her 19-pound grandson and could lift 20 pounds and later "pay for it," the ALJ concluded Cynthia was capable of lifting and carrying 20 pounds on an occasional basis in a work setting.  She contends that finding is not supported by Dr. Santiago's limitation to Cynthia lifting no more

than 20 pounds nor by Cynthia's testimony.  With regard to the former evidence, Cynthia argues Dr. Santiago's limitation said nothing about the ability to lift 20 pounds for up to two hours a day.   The Commissioner disputes the ALJ unreasonably determined Cynthia could lift 20 pounds occasionally given the State Agency doctors' opinions, Cynthia's own testimony, and the normal muscle strength and development shown by every exam.

The ALJ detailed how Dr. Santiago's October 2014 assessment that Cynthia was incapable of performing even sedentary work was directly contradicted by his own treatment notes; during his examinations, he did not consistently report Cynthia was unable to lift or carry due to range of motion loss or pain, he often described her as having full range of motion of her joints, he did not report sensation loss or reflex abnormalities, and he did not note muscle atrophy or motor weakness.  AR 25.  The ALJ rejected the notion Cynthia was unable to do sedentary work also where her daily activities demonstrated she was "able to lead a somewhat active life."   AR 26.   The ALJ specifically highlighted Cynthia's testimony that she was restricted only from lifting more than 20 pounds, was able to lift her grandchildren, including a five-year-old, and thus was "certainly able to perform the lifting and carrying requirements of light duty work."  *Id.*  Earlier in her Decision, the ALJ noted Cynthia's hearing testimony that she reported she was able to lift her five-year-old grandchild and her seven-month-old grandchild "[a]lthough uncomfortable."  AR 21.  Ultimately, the ALJ built a logical bridge between the evidence and her conclusion that Cynthia remained capable of lifting 20 pounds occasionally in a work setting.  *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (an ALJ must "build an accurate and logical bridge from the evidence to the conclusion").  Remand for a calculation of benefits is not warranted in this case where even remand for a new hearing is not warranted.

16

## V

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be granted; 3) The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Cynthia H., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on April 11, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE